UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL TUCKER,                          :
     Petitioner                        :
                                       :
     vs.                               :   CIVIL NO. 1:14-CV-1252
                                       :
WARDEN DAVID EBBERT,                      :
     Respondent                        :

*M E M O R A N D U M*

*I.*     *Introduction*

     We are considering a petition for writ of habeas corpus filed by Michael

Tucker, a pro se prisoner housed at the federal correctional institute in Canaan,

Pennsylvania.  (Doc. 1).  Petitioner asserts that he is entitled to habeas relief because

prison officials imposed discipline against him – namely, the disallowance of good

conduct time – in violation of his due process rights.  (Doc. 1-1).  For the reasons

discussed below, we will deny relief.

*II.*     *Background*

     On September 13, 2012, Petitioner was housed at FCI Three Rivers in

Texas.  (Doc. 6-1).  At approximately 7:20 p.m., a large altercation occurred in the Live

Oak Unit of the prison.  (Doc. 6-1 at 11).  On September 26, 2012, after a review of the

surveillance video, prison officials alleged that Petitioner was involved in the altercation

and charged him with aiding in the assault of another person.  (Id.).  On the same day,

Petitioner appeared before the Unit Discipline Committee (UDC) and received a copy of

the incident report and charges.  (Id.).

On November 9, 2012, Discipline Hearing Officer (DHO) Melton held a hearing concerning Petitioner's charges. (Doc. 6-1 at 18). In support of the charges, DHO Melton reviewed the incident report, heard testimony from the investigating lieutenant, compared images from the surveillance video with Petitioner's bed book photograph, and examined Petitioner's quarter history. (Doc. 6-1 at 21-22). According to the incident report and the lieutenant's testimony, a review of the video surveillance revealed that approximately thirty-five African-American inmates engaged in a fight with approximately thirteen Hispanic inmates. (Id.). At the conclusion of the altercation, an inmate bearing a resemblance to Petitioner joined the group of African-American inmates in an apparent attempt to make a demonstration of force. (Id.). The comparison of images from the surveillance video with Petitioner's bed book photograph verified that Petitioner was the inmate observed in the video. (Id.). This conclusion was corroborated by Petitioner's quarter history, which showed that Petitioner was not only assigned to the Live Oak Unit, but that he was present in the unit at the time of the fight. (Id.).

In his defense, Petitioner, assisted by his staff representative, provided a statement and presented the testimony of three witnesses. (Doc. 6-1 at 22). He testified that at the time of the altercation he was in the education department with staff member Janet Amador and was escorted back to the Live Oak Unit by Correctional Officer Castillo after the altercation was over. (Id.). According to Petitioner, Amador, Castillo, and inmate Kenneth Lee, who admittedly participated in the altercation, could attest that Petitioner was not present at the time. (Id.). DHO Melton received testimony from all of

2

Petitioner's witnesses: Janet Amador stated that she did not remember if Petitioner was in the education department at the time; Correctional Officer Castillo stated unequivocally that she did not escort Petitioner back to his cell on the date in question; and Inmate Lee testified that Petitioner was not in the Live Oak Unit at the time of the fight.  (Id.).

Considering all of this evidence, DHO Melton found that Petitioner did not commit the offense charged because there was no evidence that Petitioner actually aided in the assault of another person.  (Doc. 6-1 at 21).  However, DHO Melton did find that the greater weight of evidence established that Petitioner violated a lesser offense – engaging in or encouraging a group demonstration.  (Doc. 6-1 at 23).  For violation of this offense, DHO Melton sanctioned Petitioner to, *inter alia,* a loss of twenty-seven days good conduct time.  (Id.).  A written statement of DHO Melton's findings were given to Petitioner.  (Doc. 6-1 at 24).  Petitioner appealed the ruling, which was denied.  (Doc. 1-1 at 12).  On June 30, 2014, Petitioner filed a petition pursuant to 28 U.S.C. § 2241, alleging violations of his due process rights.  (Doc. 1).

*III.        Discussion*

First, Petitioner argues that his due process rights were violated because DHO Melton refused to show Petitioner the surveillance video of the altercation.  (Doc. 1-1 at 5).  We disagree that this violates Petitioner's due process rights.  Procedural due process requires that prisoners be given: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a

written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.  Wolff v. McDonnell, 418 U.S. 539 (1974).  It does not require that an inmate be allowed to confront the evidence against him.  Id.; Howard v. Werlinger, 403 F. App'x 776, 777 (3d Cir. 2010).  Accordingly, Petitioner's due process rights were not offended when DHO Melton refused his request to view the video footage of the incident.[1] Id.

Next, Petitioner states that his procedural due process rights were violated because he was denied the opportunity to present witnesses.  (Doc. 1-1 at 2).  He asserts that he provided a list of defense witnesses, but DHO Melton refused to call them.  We find the evidence is to the contrary.  After being informed of his rights by the UDC, Petitioner initially denied any request to present witnesses.  (Doc. 6-1 at 13).  Later, he advised his staff representative that he changed his mind and wanted to call witnesses.  (Doc. 6-1 at 18).  The staff representative informed DHO Melton, who made arrangements to receive testimony from Petitioner's witnesses.  (Id.).  Prior to rendering his opinion, DHO Melton received and considered testimony from Kenneth Lee, Janet Amador, and Correctional Officer Castillo, all of whom were Petitioner's requested witnesses.  (Doc. 6-1 at 19, 33-34).  Accordingly, the is no evidence to establish that DHO Melton denied any request by Petitioner to call witnesses.

Next, Petitioner argues that his due process rights were violated because he was denied an opportunity to present documentary evidence.  (Doc. 1-1 at 5, 8).

---

1. We also note that Petitioner's staff representative did have an opportunity to examine all of the evidence against Petitioner prior to the hearing.  (Doc. 6-1 at 20).

4

According to Petitioner, despite repeated requests, DHO Melton refused to show the

surveillance video of the education department, which would establish that Petitioner was

not in the Live Oak Unit at the time of the altercation.  (Id.).  Petitioner's argument is

unavailing.  First, there is no evidence in the record indicating that Petitioner requested to

show surveillance video of the library.  Indeed, Petitioner's administrative appeal of the

DHO's finding makes no mention of a refusal to show surveillance video of the education

department.  Second, even if he did make such a request, a refusal to show the video did

not violate Petitioner's due process rights.  A prisoner only has the right to present

documentary evidence when doing so is consistent with institutional safety.  Wolff v.

McDonnell, 418 U.S. at 566.  Courts have routinely recognized that showing an inmate

surveillance video is unduly hazardous to institutional safety.  See Howard, 403 F. App'x

at 777.  Accordingly, we find that DHO Melton did not violate Petitioner's right to present

documentary evidence.

Finally, Petitioner argues that his due process rights were violated because

the evidence was insufficient to find him guilty of engaging in a group demonstration.

Again, we disagree.  "[T]he requirements of due process are satisfied if 'some evidence'

supports the decision . . . ."  Superintendent v. Hill, 472 U.S. 445, 455 (1985).

"Ascertaining whether this standard is satisfied does not require examination of the entire

record, independent assessment of the credibility of witnesses, or weighing the

evidence."  Id.  The only relevant question is "whether there is any evidence in the record

that could support the conclusion reached . . . ."  Id.  Here, this minimal requirement is

satisfied.  The DHO reviewed the incident report and the quarter history, both of which

established that Petitioner was in the Live Oak Unit at the time of the demonstration.  He

also heard testimony from the investigating officer and examined images taken from the

surveillance video, both of which showed that Petitioner participated in the demonstration

of force.  Accordingly, we find that there was some evidence to support DHO Melton's

findings.

*IV.*        *Conclusion*

        For the reasons discussed above, we will issue an order denying relief.  We

will not issue a certificate of appealability since Petitioner has the right to appeal our

order to the Third Circuit without a certificate.  See Burkey v. Marberry, 556 F.3d 142,

146 (3d Cir. 2009).


                                        /s/William W. Caldwell
                                        William W. Caldwell
                                        United States District Judge